■ TRACY GAMELL, an Infant, by Her Guardian ad Litem, EUGENE GAMELL, et al., Respondents-Appellants, v. MOUNT SINAI HOSPITAL, Appellant; JOSEPH ROVINSKY, Respondent, et al., Defendant.— In an action to recover damages for personal injury, medical expenses and loss of services, based on medical malpractice, (1) defendant Mount Sinai Hospital appeals from a judgment of the Supreme Court, Kings County, entered January 23, 1969 upon a jury verdict, insofar as the judgment is in favor of plaintiffs against it, and (2) plaintiffs cross-appeal from the judgment insofar as it is in favor of defendant Dr. Joseph J. Rovinsky. Judgment insofar as appealed from by defendant Mount Sinai Hospital reversed, on the law and facts, and, as between plaintiffs and said defendant, action severed and new trial granted, with costs to abide the event; and judgment affirmed insofar as appealed from by plaintiffs, with costs to defendant Rovinsky against plaintiffs. This is a medical malpractice case whose origins are found in the circumstances of the birth of plaintiff Tracy Gamell on Monday, August 28, 1961. The child is severely mentally retarded. The cornerstone claim is that Dr. Joseph Rovinsky, an obstetrician at Mount Sinai Hospital, negligently delivered Tracy of her mother, Myra Gamell, in that (1) he performed an amniotomy (surgical rupturing of the uterine membranes), thus precipitating a premature birth by approximately five weeks, and in that (2) he prescribed and administered an excessive dose of demerol (150 milligrams) to the expectant mother shortly prior to delivery, causing narcotization of the infant with insufficient oxygenation of her brain. Plaintiffs' case is also built on five alleged independent bases of negligence against Mount Sinai Hospital. These five specifications relate to prenatal and postnatal care of the infant by the hospital and its employees other than Dr. Rovinsky. After a seven-week trial, the jury absolved Dr. Rovinsky of negligence but found upon a general verdict that Mount Sinai Hospital was guilty of negligence. The damages assessed against Mount Sinai were $500,000 in favor of the infant and $25,000 in favor of her father, plaintiff Eugene Gamell. Mount Sinai appeals and asks for reversal and dismissal of the complaint against it. The Gamells also appeal and contend that Dr. Rovinsky was improperly exonerated. With respect to plaintiffs' cross appeal from the judgment insofar as the jury exonerated Dr. Rovinsky of liability, we conclude that the preponderance of evidence in favor of plaintiffs is not so great that the jury's finding against them could not have been reached upon any fair interpretation of the evidence (*Olsen* v. *Chase Manhattan Bank*, 10 A D 2d 539, affd. 9 N Y 2d 829). It is our view that the preponderance of evidence is substantially in Dr. Rovinsky's favor and fully supports the jury verdict in his favor. This exoneration of Dr. Rovinsky relieves the hospital of liability at least on the *respondeat superior* theory. If the doctor is held to be non-negligent, his acts or omissions cannot make the hospital negligent (*Pangburn* v. *Buick Motor Co.*, 211 N. Y. 228; see, also, *Tactuk* v. *Freiberg*, 29 A D 2d 868, revd. on other grounds 26 N Y 2d 757). The five other alleged bases

of negligence, asserted against the hospital independently of any acts of Dr. Rovinsky, remain for consideration. Insofar as the hospital appeals from the judgment in plaintiffs' favor against it, premised on any and all of these bases, we find the jury's verdict to be against the weight of the credible evidence (*Deutsch* v. *Doctors Hosp.,* 19 `A D 2d 593 [reversing first-trial judgment in plaintiffs' favor], 21 A D 2d 775 [reversing second-trial judgment in plaintiffs' favor], and 26 A D 2d 520 [reversing third-trial judgment in plaintiffs' favor]). First, there is no proof that the absence of special hospital rules and regulations governing the use of demerol is contrary to accepted medical practice; nor is there proof that any hospital has such rules and regulations. Furthermore, since the jury found no negligence of Dr. Rovinsky in the administration of the drug, the absence of a regulation concerning its use could not be negligence. Second, the hospital and medical records disclose no facts which could have alerted the hospital's delivery room attending pediatrician that anything was wrong with the newborn child. The hospital, through this employee pediatrician, may not be charged for failing to act "unless * * * [he] had reason to know that * * * [he] should have acted within" some duty charged to him (*Fiorentino* v. ,*Wenger*, 19 N Y 2d 407, 414). Additionally, the claim that the newborn infant was abandoned in an open crib in the hospital corridor is not supported by convincing credible evidence and is contrary to the physical facts and reasonable inferences. Third, plaintiffs claim that the hospital's employees negligently failed to administer oxygen to the child during her 20-day confinement after birth. The record and expert medical evidence show no deviation from accepted medical practice in this procedure (see *Fiorentino* v. *Wenger, supra,* pp. 414–416; *Matter of Riehl* v. *Town of Amherst,* 308 N. Y. 212; *Quinones* v. *St. Vincent's Hosp.,* 20 A D 2d 529). Fourth, it is true that the hospital admitting physician, Dr. Bigdali, erroneously overestimated the expected weight of the child at 2,800 grams. However, when viewed in the perspective of the full evidence, this error had little relevance. It was fully overcome by other facts, viz.: a) This entry appears on the mother's admission sheet, and on the very same sheet is a definite showing by dates that the baby was approximately one month premature; b) on the reverse side of this same record is the actual gram weight of the child upon birth, 2,050 grams; c) there is a 4:50 P.M., actual time of birth, entry on another part of the hospital record, showing a normal "premature" baby; d) the baby's *premature* nursery chart records her weight upon entry there, 5:20 P.M., at 2,050 grams; e) at 5:45 P.M. Dr. Gribetz, the Gamells' privately retained pediatrician, did his examination and recorded in the baby's hospital record the actual gram weight, her prematurity and her excellent general condition; f) Dr. Rovinsky's and Dr. Guttmacher's obstetrical charts, stated to be part of the hospital record until Mrs. Gamell's discharge, have Dr. Rovinsky's recorded entry of expected weight of 4½ pounds, written an hour before Mrs. Gamell was even admitted to the hospital; g) the nurses and doctors testified that the actual weight of a baby upon delivery determines the ensuing procedures that control the baby's care thereafter; h) Dr. Rovinsky's uncontroverted testimony that he knew that Dr. Bigdali, the admitting physician, was in error and told him so; and i) Dr. Rovinsky's testimony that he performed the amniotomy because Mrs. Gamell was in irreversible premature labor and not because the child's weight was overestimated. This claim of negligence is untenable and against the overall weight of the evidence. Fifth and last, the claim of failure to keep adequate hospital records is without merit. There is no evidence causally relating that hypothesis to the child's condition. As trial counsel conceded at page 1743 of the printed record, this claim is not in

the complaint, not in the bill of particulars, and is not a proper theory of recovery. We grant a new trial, rather than dismiss the complaint against the hospital, because of the unusual circumstances of this case (see *Deutsch* v. *Doctors Hosp., supra*). In view of our affirmance of the judgment insofar as it is in Dr. Rovinsky's favor, the new trial against the hospital will be focused directly on the hospital's alleged independent negligent acts. Thus, plaintiffs will be afforded a further opportunity to develop other available evidence, if there be any, as to the alleged cause and legal responsibility for the infant plaintiff's mental retardation. Christ, P. J., Hopkins, Latham, Kleinfeld and Brennan, JJ., concur.