■ CLAUDIA ESCOBAR, an Infant, by Her Father and Natural Guardian, ENRIQUES ESCOBAR, et al., Appellants, v NEW YORK HOSPITAL, Respondent, et al., Defendants. — Judgment of the Supreme Court, New York County (Giaccio, J.), entered April 16, 1984, granting defendant New York Hospital's motion to dismiss the complaint, is reversed, on the law, without costs, the complaint is reinstated and the case is remanded for a new trial against defendant New York Hospital.

Mrs. Mary Escobar was 40 years old at the time she became pregnant with infant plaintiff Claudia. Prior to this pregnancy, she had suffered two miscarriages in the two preceding years. At the beginning of this pregnancy, in April 1976, Mrs. Escobar was categorized by defendant New York Hospital's clinic as a high-risk patient. This was due to the fact that so-called elderly pregnant patients are more prone to develop hypertension. There is a relationship between hypertension and premature separation of the placenta, the organ through which the fetus receives its oxygen supply. Mrs. Escobar's due date was estimated to be December 31, 1976.

While the pregnancy itself was closely followed and uncomplicated, doctors' examinations did reveal instances of hypertension, although it was not consistent. Examinations occurring around the time of her estimated due date led doctors to conclude that Mrs. Escobar was not ready for labor. This continued through January 10, 1977, almost two weeks past due date. Labor occurred on January 12, 1977 and on admission, all signs were reported normal.

The baby's heart rate was recorded every 15 minutes with a fetal monitor attached to Mrs. Escobar and was normal from 1:00-1:30 A.M. to 2:45 A.M. Somewhere around 3:00 A.M., severe fetal distress and premature separation of the placenta were indicated as the baby's heart rate dropped to a dangerous level of 60 to 80 beats per minute. At some point thereafter, the doctors arrived. The timing of these events is uncertain due to the fact that the fetal monitor tapes, which were supposed to be retained by the hospital, cannot be found. The baby was delivered by caesarean section at 3:14 A.M. It is uncontested that the infant plaintiff has cerebral palsy, is confined to a wheelchair, suffers from convulsions, is unable to speak, will require operations to keep her limbs straight, will never be gainfully employed and will require nursing attention, therapy, appliances and medical care.

During the trial, at the close of plaintiffs' case, the action against individual Doctors Ramaley, Wang and Feldman was discontinued, with prejudice. The plaintiffs made it clear that

the action would continue against defendant New York Hospital. New York Hospital moved to dismiss anyway, claiming that the dismissal of the action against the doctors meant the doctors were not negligent, therefore the hospital could not be negligent. At the close of the defendant's case, the Judge granted the motion, taking the case from the jury. This is the decision the plaintiffs appeal.

Plaintiffs claim that the court was incorrect in concluding that the hospital was not negligent simply because the case against the named doctors was dismissed. The record shows that Mrs. Escobar was a "service patient" at the clinic, meaning that she would see whichever doctor was on duty at the time of her exams. The three named doctors saw Mrs. Escobar on the night she gave birth. Just because they were not found negligent does not mean that the jury could not have found that the hospital was negligent through acts of other employees. It was alleged that from the time Mr. Escobar left the labor room to summon assistance, after the fetal heart monitor stopped, over 10 minutes elapsed before medical personnel arrived. The plaintiffs also allege that they were not properly instructed as to what the fetal heart monitor was for. (*See, Gamell v Mount Sinai Hosp.,* 34 AD2d 981; *cf. Riviello v Waldron,* 47 NY2d 297.)

The hospital contends that the plaintiffs' suit would have been valid had plaintiffs sued only the hospital, not the hospital and the doctors. Had they brought an action solely against the hospital, the hospital argues, any negligence on the part of its employees would be attributable to the hospital. Having brought an action against the hospital and the doctors, by discontinuing the case against the doctors, the plaintiffs were admitting that no negligence occurred, and this would be binding against them in favor of the hospital.

While the hospital cannot be held liable on a theory of respondeat superior based on the activity or inactivity of the named physician defendants as to whom the action has been discontinued, that does not foreclose a claim based on over-all negligence or negligence of other employees.

The plaintiffs also contend that they are entitled to an unfavorable inference against the hospital, due to its failure to save the fetal monitor tapes. As this matter will be addressed in a new trial, it is best left to the trial court.

We therefore remand for a new trial, but limited to the alleged negligent actions of defendant New York Hospital through employees other than Doctors Ramaley, Wang and Feldman. (*See, Gamell v Mount Sinai Hosp., supra.*) Concur — Murphy, P. J., Kupferman, Sullivan, Kassal and Rosenberger, JJ.